# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| NATHANIEL WOODS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-00058-ECM |
| | ) | |
| JEFFERSON DUNN, | ) | |
| Commissioner, Alabama | ) | |
| Department of Corrections, | ) | |
| | ) | |
| CYNTHIA STEWART, Warden, | ) | |
| Holman Correctional Facility, and | ) | |
| | ) | |
| STEVE MARSHALL, Attorney | ) | |
| General, State of Alabama, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OBJECTION TO WOODS'S MOTION FOR STAY OF EXECUTION

Steve Marshall
*Alabama Attorney General*

Lauren A. Simpson*
*Alabama Assistant Attorney General*
 *Counsel of Record

Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130-0152
Tel: (334) 353-1209
Fax: (334) 353-8400
Lauren.Simpson@alabamaag.gov

February 25, 2020

INTRODUCTION ...............................................................................1

I.    Woods's current § 1983 follows the same path as the *Price* litigation and should likewise result in no stay of execution ........................7

    A.    Southern District of Alabama: January–April 2019 ..........................7

    B.    Eleventh Circuit: April 8–10, 2019 ...................................................12

    C.    Southern District of Alabama, Eleventh Circuit, and Supreme Court: April 11, 2019 ......................................................................15

    D.    Second execution date: April 12–May 30, 2019 ..............................18

    E.    Woods's litigation tracks Price's, and his execution should likewise not be stayed........................................................................19

II.    Beyond his untimeliness, Woods cannot satisfy the requirements for a stay to issue ................................................................................21

    A.    Woods cannot show a substantial likelihood of success on the merits concerning his Fourteenth Amendment due process claim ...21

    B.    Woods cannot show a substantial likelihood of success on the merits concerning his Eighth Amendment claim ..............................24

    C.    Woods cannot show a substantial likelihood of success on the merits concerning his Fourteenth Amendment equal protection claim .................................................................................29

    D.    Woods cannot show a substantial likelihood of success on the merits concerning his state-law fraud claims ...................................31

    E.    Woods cannot show a substantial likelihood of success on the merits concerning his state-law AAPA claim ...................................33

    F.    The State and victims have an important interest in the timely enforcement of Woods's sentence.....................................................35

CONCLUSION ............................................................................................36

**INTRODUCTION**

Nathaniel Woods's motion for stay of execution, filed shortly before 4 p.m. yesterday, is a textbook example of undue delay and gamesmanship in execution litigation. Woods has known since January 30, 2020, that his execution is set for March 5.[1] He has known since February 14 that this Court will be holding a motions hearing tomorrow morning, February 26.[2] He managed to petition the Alabama Supreme Court for a stay of execution on February 7, and that court denied the request on February 14.[3] His counsel even found time to offer commentary to media organization The Appeal about the "travesty" of Woods's case.[4] And yet, despite now having the assistance of five pro bono attorneys, Woods was seemingly unable to move this Court for a stay until yesterday afternoon, forcing Defendants to quickly answer a motion that was not contemplated by the Court's scheduling order and unnecessarily denying the Court ample time to consider the merits of the pleadings.[5]

---

1. Doc. 19-2.
2. Doc. 23.
3. Woods filed his initial petition on February 7. The clerk's office notified him on February 11 that the petition would not be accepted until his signing counsel became an attorney of record and complied with the court's rules regarding document formatting. Counsel entered a notice of appearance, and Woods filed an amended petition later that day.
4. Lauren Gill, *Alabama Prepares to Execute a Man Whose Case Is Haunted by Claims of Police Misconduct*, AL.COM (Feb. 24, 2020, 11:53 AM), https://bit.ly/3a1c1h9.
5. Incredibly, Woods claims that he "moved to stay his execution expeditiously— first, by giving the Alabama Supreme Court an opportunity to stay its January 30, 2020 execution order and then by filing the instant motion with this Court."

In his § 1983 complaint before this Court, Woods raised six claims: two Fourteenth Amendment claims, one Eighth Amendment claim, and three state-law claims. As discussed in Defendants' pleadings,[6] these claims are meritless. Moreover, they could have been raised long before January 23.[7] Woods has known of the nitrogen hypoxia election period since June 2018, and he has known that the State was seeking an execution date since October 2019. He has been represented by counsel during this entire period.

Like Woods, Christopher Price raised several similar claims just last year—again, like Woods, on the eve of his execution—and was ultimately executed after his legal maneuvering failed. The Supreme Court noted in vacating the lower courts' stay in that case that "[a] court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief."[8] Indeed, as the Supreme Court cautioned last year in *Bucklew v. Precythe*:

> Under our Constitution, the question of capital punishment belongs to the people and their representatives, not the courts, to resolve. The proper role of courts is to ensure that method-of-execution challenges to lawfully issued sentences are resolved fairly and expeditiously. Courts should police carefully against attempts to use such challenges as tools to interpose unjustified delay. Last-minute stays should be the extreme exception, not the norm, and "the last-minute nature of an

---

Doc. 29 at 26. Defendants' allegations of "delay tactics" are hardly baseless.
6. Docs. 19, 25.
7. Doc. 1. While the document is dated "June 23, 2020," *id.* at 24, this is a typographic error.
8. *Dunn v. Price*, 139 S. Ct. 1312, 1312 (2019) (mem.) (quoting *Gomez v. United States Dist. Court for Northern Dist. of Cal.*, 503 U.S. 653, 654 (1992)).

application" that "could have been brought" earlier, or "an applicant's attempt at manipulation," "may be grounds for denial of a stay." *Hill v. McDonough*, 547 U.S. 573, 584 (2006) (internal quotation marks omitted). So, for example, we have vacated a stay entered by a lower court as an abuse of discretion where the inmate waited to bring an available claim until just 10 days before his scheduled execution for a murder he had committed 24 years earlier. See *Dunn* v. *Ray*, 139 S. Ct. 661 (2019). If litigation is allowed to proceed, federal courts "can and should" protect settled state judgments from "undue interference" by invoking their "equitable powers" to dismiss or curtail suits that are pursued in a "dilatory" fashion or based on "speculative" theories. *Hill*, 547 U.S. at 584–85.[9]

In brief, and as discussed below, the *Price* litigation provides guidance for this Court. Like Price, Woods has engaged in dilatory tactics, he cannot show a substantial likelihood of success on the merits of his § 1983 complaint, and he is not entitled to a stay of execution.

"[A] court may grant a stay of execution *only* if the moving party establishes that: '(1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; *and* (4) if issued, the injunction would not be adverse to the public interest.'"[10] And as "[t]he Supreme Court . . . reiterated . . . three times [last] year," courts should apply "a 'strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration

_____

9. 139 S. Ct. 1112, 1134 (citations edited, footnote omitted).
10. *Brooks v. Warden*, 810 F.3d 812, 818 (11th Cir. 2016) (citations omitted).

of the merits without requiring entry of a stay.'"[11] Woods's stay request should be denied because it does not meet any of the requirements for a stay to issue.

First, Woods cannot demonstrate a substantial likelihood of success on the merits. As set forth in Defendants' motion to dismiss and motion for summary judgment[12]:

1. The procedural due process claim is meritless because Defendants were under no obligation to inform him of details of the execution protocols, he was given the same information as other death-row inmates, he was permitted to consult his counsel, and Defendants have no rule "targeting" inmates who did not elect hypoxia.

2. The Eighth Amendment claim is meritless because Woods cannot satisfy his burden under *Baze v. Rees*,[13] *Glossip v. Gross*,[14] and *Bucklew* of (1) showing that the ADOC's current lethal injection protocol—the protocol approved in *Glossip*—"presents a risk that is sure or very likely to cause serious illness and needless suffering, amounting to an objectively intolerable risk of harm,"[15] and (2) naming an alternative method of execution that is "feasible,

---

11. *Long v. Sec'y, Dep't of Corr.*, 924 F.3d 1171, 1176 (11th Cir.), *cert. denied sub nom. Long v. Inch*, 139 S. Ct. 2635 (2019) (quoting *Nelson v. Campbell*, 541 U.S. 637, 650 (2004)).
12. Doc. 19.
13. 553 U.S. 24 (2008).
14. 135 S. Ct. 2726 (2015).
15. *Glossip*, 135 S. Ct. at 2736 (quotation omitted).

readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain."[16]

3.  The equal protection claim is meritless because Woods could have joined the hypoxia class but declined to do so, he is now differently situated to those inmates because there is no legal impediment to his execution, and again, Defendants are not targeting him for execution.

4.  The state-law fraudulent misrepresentation and fraudulent suppression claims are meritless because Defendants made no false representations and suppressed no information that they had a duty to disclose to Woods, Defendants were not obligated to have a hypoxia protocol in place by June 30, 2018, and again, there is no policy "targeting" inmates who did not elect.

5.  The state-law Alabama Administrative Procedure Act claim is meritless because Defendants have established no new rule targeting inmates who did not elect hypoxia.

Second, the other factors counsel against granting a stay. The Supreme Court has held that "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a sentence."[17] For this reason, "equity must be sensitive to the State's strong interest in enforcing its criminal judgments without

---

16. *Baze*, 553 U.S. at 52.
17. *Hill*, 547 U.S. at 584.

undue interference from the federal courts."[18] As the Supreme Court noted in

*Bucklew*:

> Mr. Bucklew committed his crimes more than two decades ago. He exhausted his appeal and separate state and federal habeas challenges more than a decade ago. Yet since then he has managed to secure delay through lawsuit after lawsuit. He filed his current challenge just days before his scheduled execution. That suit has now carried on for five years and yielded two appeals to the Eighth Circuit, two 11th-hour stays of execution, and plenary consideration in this Court. And despite all this, his suit in the end amounts to little more than an attack on settled precedent, lacking enough evidence even to survive summary judgment—and on not just one but many essential legal elements set forth in our case law and required by the Constitution's original meaning.[19]

Here, the rights of the victims of Woods's crime, the State, and the public interest at large heavily outweigh Woods's request for a stay. Carrying out Woods's lawful sentence pursuant to a state conviction "acquires an added moral dimension" because his postconviction proceedings have run their course.[20]

Woods has been on death row for fifteen years for a crime he committed in 2004, which resulted in the senseless deaths of three Birmingham police officers and the attempted murder of a fourth. His conviction is valid, and a competent state court with jurisdiction over his case properly set his execution according to Alabama law. Woods waited almost two months after the State moved for his

---

18. *Id.*
19. *Bucklew*, 139 S. Ct. at 1133–34.
20. *Calderon v. Thompson*, 523 U.S. 538, 556 (1998).

execution date to be set before initiating the current § 1983 litigation in January. This litigation is nothing but a meritless delay tactic, and so this Court should strongly consider Alabama's interest in enforcing its criminal judgment and deny Woods's request.

## I.    Woods's current § 1983 follows the same path as the *Price* litigation and should likewise result in no stay of execution.

Defendants have previously discussed Christopher Price's final § 1983 litigation,[21] but considering the strong parallels between that litigation and the matter before this Court, it is helpful to revisit Price's case to demonstrate why Woods is not entitled to a stay of execution.

### A.    Southern District of Alabama: January–April 2019

Like Woods, Price was represented by counsel during the June 2018 election period, could have contacted his attorney with questions about nitrogen hypoxia, but neglected to make a timely election.[22] Indeed, the Eleventh Circuit discussed the hypoxia election period in an opinion **in Price's case** in September 2018.[23] Still, incredibly, Price's counsel claimed that he knew nothing about the election opportunity until January 12, 2019, the day after the State moved the Alabama

---

21. Doc. 19.
22. *Price v. Comm'r, Ala. Dep't of Corrs.*, 752 F. App'x 701, 703 n.3 (11th Cir. 2018).
23. *Id.*

Supreme Court to set Price's execution date.[24] This, at least, sets Price apart from Woods, who has never claimed ignorance of the election period.[25]

Price then tried to make an untimely election of hypoxia, sending a letter to the warden on January 27 and contacting counsel for the State on February 4.[26] Only after his attempts proved futile did Price file a § 1983 complaint in the Southern District of Alabama on February 8, nearly one month after the State moved for an execution date, alleging an equal protection violation because he was not allowed to elect hypoxia.[27] On March 1, the Alabama Supreme Court set Price's execution for April 11.[28] Comparing Price and Woods on this ground, Price was the more diligent: Woods waffled about actually electing hypoxia in his complaint to this Court and never truly attempted to elect until the day after his execution date was set.[29]

With forty-one days until Price's execution, the State moved for summary

---

24. Complaint ¶ 32, *Price v. Dunn*, 1:19-cv-00057-KD-MU (S.D. Ala. Feb. 8, 2019), Doc. 1.

25. Even if, arguendo, Woods had been unaware, then the *Price* litigation should have put his local counsel on notice in early 2019.

26. Exhibits C–D, *Price v. Dunn*, 1:19-cv-00057-KD-MU (S.D. Ala. Mar. 4, 2019), Docs. 19-3, 19-4.

27. Complaint ¶¶ 87–93, *Price v. Dunn*, 1:19-cv-00057-KD-MU (S.D. Ala. Feb. 8, 2019), Doc. 1.

28. Exhibit E, *Price v. Dunn*, 1:19-cv-00057-KD-MU (S.D. Ala. Mar. 4, 2019), Doc. 19-5.

29. Doc. 19-3.

judgment in the district court,[30] while Price sought discovery.[31] The court, meanwhile, set oral argument for April 4,[32] one week before Price's execution, and granted expedited discovery.[33] Finally, on March 29—thirteen days before his scheduled execution—Price filed a motion for stay of execution[34] and a cross-motion for summary judgment.[35]

Three days later, on April 1, 2019, the Supreme Court announced its decision in *Bucklew v. Precythe*,[36] a method-of-execution challenge in which a Missouri inmate named nitrogen hypoxia as his alternative without proving its ready availability. In that case, the Court made clear that under *Baze* and *Glossip*, simply naming an alternative method of execution, without more, is insufficient to satisfy an inmate's burden. The Court explained:

> *First*, an inmate must show that his proposed alternative method is not just theoretically "'feasible'" but also "'readily implemented.'" *Glossip*, 135 S. Ct., at 2737–38. This means the inmate's proposal must be sufficiently detailed to permit a finding that the State could carry it

---

30. Motion for Summary Judgment, *Price v. Dunn*, 1:19-cv-00057-KD-MU (S.D. Ala. Mar. 4, 2019), Doc. 19.
31. Plaintiff's Motion to Compel Answers to His First Set of Interrogatories, *Price v. Dunn*, 1:19-cv-00057-KD-MU (S.D. Ala. Mar. 4, 2019), Doc. 20.
32. Scheduling Order, *Price v. Dunn*, 1:19-cv-00057-KD-MU (S.D. Ala. Mar. 4, 2019), Doc. 18.
33. Order, *Price v. Dunn*, 1:19-cv-00057-KD-MU (S.D. Ala. Mar. 6, 2019), Doc. 25.
34. Emergency Motion for a Preliminary Injunction, *Price v. Dunn*, 1:19-cv-00057-KD-MU (S.D. Ala. Mar. 29, 2019), Doc. 28.
35. Christopher Price's Cross-Motion for Summary Judgment, *Price v. Dunn*, 1:19-cv-00057-KD-MU (S.D. Ala. Mar. 29, 2019), Doc. 29.
36. 132 S. Ct. 1112 (2019).

out "relatively easily and reasonably quickly." *McGehee v. Hutchinson*, 854 F.3d 488, 493 (8th Cir. 2017); *Arthur v. Comm'r, Ala. Dep't of Corrs.*, 840 F.3d 1268, 1300 (11th Cir. 2016). Mr. Bucklew's bare-bones proposal falls well short of that standard. He has presented no evidence on essential questions like how nitrogen gas should be administered (using a gas chamber, a tent, a hood, a mask, or some other delivery device); in what concentration (pure nitrogen or some mixture of gases); how quickly and for how long it should be introduced; or how the State might ensure the safety of the execution team, including protecting them against the risk of gas leaks. Instead of presenting the State with a readily implemented alternative method, Mr. Bucklew (and the principal dissent) point to reports from correctional authorities in other States indicating that additional study is needed to develop a protocol for execution by nitrogen hypoxia. . . . That is a proposal for more research, not the readily implemented alternative that *Baze* and *Glossip* require.[37]

Price, like Bucklew, failed to make this critical showing in his pleadings in the district court. He pointed to nitrogen hypoxia as a statutory method of execution, but the ADOC did not have a hypoxia protocol at that time, and he failed to offer the ADOC a protocol that could be readily used. Instead, Price noted that Oklahoma had conducted preliminary research on the issue[38] and showed that his counsel's associate was able to purchase a tank of nitrogen in Massachusetts.[39]

The district court, having been made aware of *Bucklew*, held the scheduled motions hearing on April 4. The next day, April 5, the court denied Price's motion

---

37. *Id.* at 1129 (citations edited).
38. Affidavit of Aaron M. Katz, Ex. A, *Price v. Dunn*, 1:19-cv-00057-KD-MU (S.D. Ala. Mar. 29, 2019), Doc. 29-2.
39. Affidavit of Sean B. Kennedy, *Price v. Dunn*, 1:19-cv-00057-KD-MU (S.D. Ala. Mar. 29, 2019), Doc. 29-4.

for summary judgment and stay motion.[40] In so doing, the court first denied summary judgment as to Price's equal protection claim.[41] As for Price's Eighth Amendment claim, the court, citing *Bucklew*, held that Price failed to show that nitrogen hypoxia was readily implemented by the ADOC and that it would significantly reduce a substantial risk of severe pain to him.[42]

Price moved for reconsideration that day, offering a protocol of sorts, one purportedly based on two books published by right-to-die organizations.[43] Aside from the fact that this proposed protocol was offered only six days before Price's scheduled execution, Price still failed to show that it was an available method for the ADOC to employ. His claim that the necessary components "can be purchased from commercial sources, no questions asked (including from sources such as Amazon.com)"[44] was belied by the fact that he failed to identify a commercial source willing to sell the ADOC a so-called "exit bag,"[45] a key component of his protocol. Price also renewed his motion for stay of execution on April 6.[46] The district court

---

40. Order, *Price v. Dunn*, 1:19-cv-00057-KD-MU (S.D. Ala. Apr. 5, 2019), Doc. 32.
41. *Id.* at 9–16.
42. *Id.* at 19–23.
43. Motion for Relief from Judgment and for Reconsideration at 4 & n.2, *Price v. Dunn*, 1:19-cv-00057-KD-MU (S.D. Ala. Apr. 5, 2019), Doc. 33.
44. *Id.* at 5.
45. For example, Sharlotte Hydorn, who sold "GLADD" exit bags by mail, was raided by the FBI in 2011 and died in 2013. Faye Girsh, *Charlotte Hydorn of GLADD Exit Bags Dies at 94*, ASSISTED-DYING BLOG (Dec. 13, 2013), https://bit.ly/2IhYeYK.
46. Plaintiff's Renewed Emergency Motion for Preliminary Injunction, *Price v.*

denied both motions that day—five days before Price's execution date—holding that Price failed to show that his protocol could be readily implemented and that the State did not have a "legitimate reason for refusing his untimely request to be executed by nitrogen hypoxia."[47]

## B. Eleventh Circuit: April 8–10, 2019

Price filed an emergency motion for stay of execution in the Eleventh Circuit on April 8, three days before his execution,[48] and the State responded later that day.[49] The panel issued its decision in a published order on April 10, but it muddied the waters. The court denied a stay because Price could not show a substantial likelihood of success; indeed, Price had relied upon a draft report from East Central University clearly marked "Do Not Cite." However, the court held that hypoxia was available to Price—an inquiry the Supreme Court has always treated as a factual matter— solely because the method of execution was authorized by statute. In brief, the panel believed that *Bucklew* was distinguishable because hypoxia was not contemplated

---

*Dunn*, 1:19-cv-00057-KD-MU (S.D. Ala. Apr. 6, 2019), Doc. 34.

47. Order at 2, *Price v. Dunn*, 1:19-cv-00057-KD-MU (S.D. Ala. Apr. 6, 2019), Doc. 35.

48. Emergency Motion for Stay of Execution, *Price v. Comm'r, Ala. Dep't of Corrs.*, 19-11268 (11th Cir. Apr. 8, 2019).

49. Brief of the Defendants-Appellees and Objection to Price's Emergency Motion for Stay of Execution, *Price v. Comm'r, Ala. Dep't of Corrs.*, 19-11268 (11th Cir. Apr. 8, 2019).

by statute in Missouri, whereas it was in Alabama.[50]

The problem with the panel's reasoning is that the distinction it drew was no distinction at all. As Justice Breyer noted, "Bucklew identified as an alternative method of execution the use of nitrogen hypoxia, which is a form of execution by lethal gas. **Missouri law permits the use of this method of execution**."[51] The panel's decision, therefore, was based on overlooked facts that led it to misinterpret the law.

Price's position was virtually identical to that of Bucklew, who challenged Missouri's plan to execute him by lethal injection and "claimed that execution by 'lethal gas' was a feasible and available alternative method," "later clarif[ying] that the lethal gas he had in mind was nitrogen."[52] "Lethal gas" and "lethal injection" are Missouri's two statutorily approved methods of execution.[53] Thus, everyone involved in that litigation agreed that nitrogen hypoxia, a form of lethal gas, was statutorily available. Indeed, the Eighth Circuit noted that "[n]itrogen hypoxia is an authorized method of execution under Missouri Law,"[54] and Missouri "did not dispute that lethal gas is legally authorized in Missouri under Mo. Rev. Stat.

---

50. *Price v. Comm'r, Ala. Dep't of Corrs.*, 920 F.3d 1317, 1326–29 (11th Cir. 2019).
51. *Bucklew*, 139 S. Ct. at 1142 (Breyer, J., dissenting) (citing MO. REV. STAT. § 546.720 (2002)) (emphasis added).
52. *Id.* at 1121.
53. MO. REV. STAT. § 546.720 (1).
54. *Bucklew v. Precythe*, 883 F.3d 1087, 1094 (8th Cir. 2018) (citing MO. STAT. ANN. § 546.720).

§ 546.720."[55]

But even though nitrogen hypoxia was a statutorily authorized method of execution in Missouri, the Supreme Court held that Bucklew needed to "show that his proposed alternative method is not just theoretically 'feasible' but also 'readily implemented.'"[56] In other words, mere statutory authorization of a method of execution did not relieve him of his burden to submit a "proposal . . . sufficiently detailed to permit a finding that the State could carry it out relatively easily and reasonably quickly."[57]

The Eleventh Circuit, perhaps unaware of the full facts of Bucklew's case and how similar it was to Price's—an understandable position, given the rushed nature of last-minute execution litigation—reached the opposite conclusion: "nitrogen hypoxia is an available method of execution for [Price] because the Alabama legislature has authorized it."[58] Departing from *Bucklew*, the panel held that "[i]f a State adopts a particular method of execution—as the State of Alabama did in March 2018—it thereby concedes that the method of execution is available to its inmates."[59] But as the facts and reasoning of *Bucklew* make clear, statutory authorization alone

---

55. Brief of Respondents at 33, *Bucklew v. Precythe*, 139 S. Ct. 1112 (2019) (17-8151).
56. *Id.* at 1129 (quoting *Glossip*, 135 S. Ct. at 2737–38).
57. *Id.* (quotation omitted).
58. *Price*, 920 F.3d at 1326.
59. *Id.* at 1327–28.

does not make a method of execution "available" for *Baze* and *Glossip*'s purposes. Bucklew could not satisfy this requirement, and neither could Price.[60]

## C. Southern District of Alabama, Eleventh Circuit, and Supreme Court: April 11, 2019

Price avoided his scheduled execution on April 11 because he buried the courts in last-minute filings, the district court improvidently granted a stay without jurisdiction, and the Eleventh Circuit panel punted. Justice Thomas, joined by Justices Alito and Gorsuch, filed an extraordinary concurrence to the denial of certiorari in **another of Price's cases** that May explaining what went wrong:

> A few hours before his scheduled execution on April 11, petitioner filed a petition for a writ of certiorari and an accompanying application for a stay of his execution. While that petition and application were pending here, and before any mandate issued from the Eleventh Circuit, petitioner filed yet another motion for a preliminary injunction in the District Court. Petitioner attached several affidavits and a final version of the report by the East Central University. The District Court granted a stay approximately two hours before the scheduled execution time of 6 p.m. central time, holding that, in light of the Eleventh Circuit's opinion and the new submissions, petitioner had now demonstrated a likelihood of success on the merits. The State immediately filed in the Eleventh Circuit a motion to vacate on the ground that the District Court lacked jurisdiction over the case, which was still at the Eleventh Circuit. But the Eleventh Circuit entered its own stay "in light of the jurisdictional questions raised by the parties' motions." *Price v. Comm'r, Ala. Dep't of Corrs.*, 19-11268-P, 2019 WL1591475, at \*1 (Apr. 11, 2019). The State then promptly filed an application to vacate the stays in this Court so that it could carry out the execution as planned

---

60. *Id.* at 1328 ("We agree that Price did not come forward with sufficient detail about how the State could implement nitrogen hypoxia to satisfy *Bucklew*'s requirement where the inmate proposes a new method of execution.").

before the warrant expired at midnight.

We granted the State's application to vacate the stays. Consistent with our usual practice in resolving eleventh-hour applications, we did not issue a full opinion explaining our reasoning. Yet our brief order was not issued until hours after the execution warrant had already expired. The Court's delay in issuing the order happens to have the same effect as Justice Breyer's preferred course of action. As he explained in his dissent, he preferred to discuss the matter at Conference the following day, which would require the State to "obtain a new execution warrant, thus delaying the execution." *Price*, 139 S. Ct. at 1314 (Breyer, J., dissenting). Justice Breyer asserted that "delay was warranted" in part because the legal issues raised were "substantial." *Id.* (Breyer, J., dissenting). That rationale does not withstand even minimal legal scrutiny.

Justice Breyer framed the issue before the Court as "the right of a condemned inmate not to be subjected to cruel and unusual punishment in violation of the Eighth Amendment." *Id.* at 1315 (Breyer, J., dissenting). That framing was incorrect. The issue before the Court was whether the lower courts abused their discretion in staying the execution. **For three independent reasons—all raised by the State in its application—the State was entitled to vacatur.** The dissent failed to adequately address any of them.

First, the District Court abused its discretion in granting a preliminary injunction because it manifestly lacked jurisdiction over the case, which was pending in the Court of Appeals. It is well settled that "[f]iling a notice of appeal," as petitioner did, "transfers adjudicatory authority from the district court to the court of appeals." *Manrique v. United States*, 137 S. Ct. 1266, 1271 (2017). . . .

[. . .]

Second, the Eleventh Circuit did not consider how petitioner's unjustified delay in presenting his "new evidence" to the District Court factored into the equitable considerations of a stay. *See Hill v. McDonough*, 547 U.S. 573, 584 (2006) (equity weighs against a stay when "'a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay'"). Notably, the Eleventh Circuit did not conclude that petitioner's new affidavits or the "final" version of the report made him likely to succeed on the merits or that those materials were unavailable to him earlier. And more broadly, petitioner delayed in bringing this successive § 1983 action until almost a year after Alabama enacted the legislation

authorizing nitrogen hypoxia as an alternative method, six months after he forwent electing it as his preferred method, and weeks after the State sought to set an execution date. There is simply no plausible explanation for the delay other than litigation strategy. A stay under these circumstances—in which the petitioner inexcusably filed additional evidence hours before his scheduled execution after delaying bringing his challenge in the first place—only encourages the proliferation of dilatory litigation strategies that we have recently and repeatedly sought to discourage. *See Bucklew*, 139 S. Ct. at 1134; *Dunn v. Ray*, 139 S. Ct. 661, 661 (2019).

Third, petitioner was unlikely to succeed on the merits of his method-of-execution claim. The three-drug protocol petitioner attacks is the very one we upheld in *Glossip*. And the Eleventh Circuit's April 10 analysis about whether nitrogen hypoxia was "available" and could be "readily implemented" was suspect under our precedent. As we recently held, "the inmate's proposal must be sufficiently detailed to permit a finding that the State could carry it out relatively easily and reasonably quickly." *Bucklew*, 139 S. Ct. at 1115 (internal quotation marks omitted). Here, petitioner's haphazard, one-page proposed protocol—provided for the first time in his motion for reconsideration less than a week before his scheduled execution date—was, to put it charitably, untested. It contemplated that the execution team could use a "hose fitting" to "fill" a "hood" with nitrogen gas, and then attempt to "[p]lace [the] hood over [the] inmate's head" and "secure" it with an "elastic strap/drawstring to ensure seal." Even if all the equipment were available on Amazon.com, as he alleged, many details remained unanswered, particularly regarding the actual process of administering the gas and, critically, the safety of the state employees administering it. For instance, what does "a robust yet controlled flow of nitrogen" mean? How full of nitrogen gas should the hood be before placing it over the inmate's head? How does one prevent nitrogen from seeping out of the hood into the execution chamber before the hood is secured? The need to settle on details like these explains why the State has repeatedly stated that it will not be ready to implement its nitrogen hypoxia method until the end of the summer or later (and why the State requested that inmates elect nitrogen within a set time period). Petitioner's proposal certainly fell short of showing a safe alternative that could be "readily implemented" by Alabama, particularly in the week before his scheduled execution.

**The facts of this case cast serious doubt on the Eleventh**

**Circuit's suggestion that the State bears a heavy burden of showing that a method of execution is unavailable as soon as its legislature authorizes it to employ a new method.** That kind of burden-shifting framework would perversely incentivize States to delay or even refrain from approving even the most humane methods of execution.

　[. . .]

**Petitioner's strategy is no secret, for it is the same strategy adopted by many death-row inmates with an impending execution: bring last-minute claims that will delay the execution, no matter how groundless. The proper response to this maneuvering is to deny meritless requests expeditiously.** The Court instead failed to issue an order before the expiration of the warrant at midnight, forcing the State to "cal[l] off" the execution. *Price*, 139 S. Ct. at 1314 (Breyer, J., dissenting). To the extent the Court's failure to issue a timely order was attributable to our own dallying, such delay both rewards gamesmanship and threatens to make last-minute stay applications the norm instead of the exception. *See Bucklew*, 139 S. Ct. at 1114.[61]

## D.　Second execution date: April 12–May 30, 2019

The State moved the Alabama Supreme Court to expeditiously reset Price's execution date, and that court did so, setting the second date for May 30, 2019.

Price's § 1983 litigation continued in the Southern District, but having received guidance from the Supreme Court, that court refused to grant further stays of execution.[62] The Eleventh Circuit likewise denied a stay:

---

61. *Price v. Dunn*, 139 S. Ct. 1533, 1536–40 (2019) (Thomas, J., concurring in denial of certiorari) (citations edited or omitted, emphasis added).

62. Order at 2, *Price v. Dunn*, 1:19-cv-00057-KD-MU (S.D. Ala. May 1, 2019), Doc. 65 ("The Supreme Court vacated the stay of execution due to Price's failure to timely elect for nitrogen hypoxia, making clear that a stay of execution is not an available remedy to Price."); Order at 4–5, *Price v. Dunn*, 1:19-cv-00057-KD-MU (S.D. Ala. May 26, 2019), Doc. 88 ("[E]ven if this Court had jurisdiction over the fourth motion to stay execution, the Court would deny the motion based

We do not address the issue of the district court's jurisdiction to enter a stay because of the very short timeframe available to us to and because, in any case, we agree that the Supreme Court's April 12, 2019, decision in *Dunn v. Price*, 139 S. Ct. 1312 (2019), precludes the entry of a stay of execution here. As we indicated in our May 24th opinion, the Supreme Court has already spoken on the timeliness of Price's Eighth Amendment claim. There, we concluded that the Supreme Court's findings as to the untimeliness of Price's midazolam/nitrogen-hypoxia-based method-of-execution claims were now the law of the case. *Price v. Comm'r, Ala. Dep't of Corrs.*, 772 F. App'x 880, 885–86 (11th Cir. 2019).[63]

The Supreme Court was similarly disinclined to stay the execution,[64] and Price was executed as scheduled.

### E. Woods's litigation tracks Price's, and his execution should likewise not be stayed.

Woods's strategy in waiting until two months after the State moved for his execution date "is no secret, for it is the same strategy adopted by many death-row inmates with an impending execution: bring last-minute claims that will delay the execution, no matter how groundless."[65] If Price was untimely in waiting until February 2019 to bring his claims concerning the hypoxia protocol and the election

---

on the Supreme Court's decision on Price's first motion to stay. The Supreme Court determined that Price's claim, that his method of execution should be by nitrogen hypoxia and not the three-drug method, is untimely and therefore cannot be the basis of a stay of execution.").

63. *Price v. Comm'r, Ala. Dep't of Corrs.*, 772 F. App'x 827, 830 (11th Cir. 2019) (citation edited).

64. *Price v. Dunn*, 139 S. Ct. 1794 (2019) (mem.).

65. *Price*, 139 S. Ct. at 1540 (2019) (Thomas, J., concurring in denial of certiorari).

period—even claiming that his counsel had no knowledge of such until January 12, 2019—how much more untimely is Woods, who (1) had local counsel during the election period (and now), (2) never claimed to be unaware of the hypoxia election period, and (3) still waited until January 23, 2020, to file a § 1983 complaint in this Court? Woods's counsel knew or should have known about the *Price* litigation in early 2019. He and his client were put on notice on October 29, 2019, that the State was seeking an execution date. And yet, Woods waited nearly two months before taking any action—and another eight days before actually trying to submit a hypoxia election in writing.

There is no reason that Woods could not have filed his § 1983 complaint sooner. If he truly believed that Defendants were targeting non-electing inmates for execution or had committed state-law fraud, he could have filed a complaint months ago. He could have filed a § 1983 complaint in November 2019, when he knew that an execution date was imminent. Indeed, he could have attempted to elect hypoxia at any point after June 2018, **particularly** after Price's attempts in early 2019.

But he did nothing. Instead, he waited until January, found five new lawyers to join his team, and brought a slate of meritless claims before this Court in an attempt to postpone his lawful execution. And now, having had his stay request denied by the Alabama Supreme Court since February 14, Woods waited until the afternoon of February 24 to ask the same of this Court. As Justice Thomas concluded

in Price's case, "The proper response to this maneuvering is to deny meritless requests expeditiously."[66]

## II. Beyond his untimeliness, Woods cannot satisfy the requirements for a stay to issue.

As noted above, a stay of execution may only be granted under certain limited conditions:

> It is by now hornbook law that a court may grant a stay of execution *only* if the moving party establishes that: "(1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; and (4) if issued, the injunction would not be adverse to the public interest." *See Powell v. Thomas,* 641 F.3d 1255, 1257 (11th Cir. 2011).[67]

Even if his current litigation and stay motion were timely—which they are not—for the reasons that follow, Woods cannot satisfy the requirements for a stay to issue.

### A. Woods cannot show a substantial likelihood of success on the merits concerning his Fourteenth Amendment due process claim.

As set forth in Defendants' earlier motion,[68] in this Circuit, "a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state

---

66. *Price*, 139 S. Ct. at 1540 (2019) (Thomas, J., concurring in denial of certiorari).
67. *Brooks v. Warden*, 810 F.3d 812, 818 (11th Cir. 2016) (citation edited).
68. Doc. 19 at 31.

action; and (3) constitutionally-inadequate process."[69] Woods cannot show a substantial likelihood of success for several reasons.

First, there is no Alabama or federal law mandating that an inmate be informed of the details of his method of execution. Woods, like all other death-row inmates at Holman Correctional Facility, was told in the June 2018 election form that an inmate who elected would be choosing execution by "nitrogen hypoxia rather than by lethal injection."[70] Had Woods wanted more information about hypoxia during the election period, he could have consulted his counsel.[71] Indeed, Defendants never prohibited Woods from doing such during the election period, nor did Woods allege that his counsel was unaware of the hypoxia election period or of the general concept of nitrogen hypoxia as a method of execution.

Second, the *Mathews v. Eldridge*[72] factors—a private interest affected by an official action, the risk of erroneous deprivation of that interest, and the government's interest—weigh in Defendants' favor.

As for the first factor, while a death-sentenced inmate is not "deprived of all

---

69. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).
70. Doc. 1 ¶ 47.
71. Woods alleges that the inmates in *In re: Alabama Lethal Injection Protocol Litigation* benefitted from "judicially-created opportunities to confer with counsel" during the election period. *Id.* ¶ 93. But he offered nothing to show that he, for example, could not have placed a call to his attorney during the month of June 2018.
72. 424 U.S. 319, 335 (1976).

interest in his life before his execution,"[73] he has no right to determine the time and date of his execution once there is no longer a judicial impediment to his sentence being carried out. Woods has no private interest being affected by an official action because his "residual life interest" does not extend so far as to prohibit the State from employing a constitutional method of execution to carry out his lawfully imposed sentence.

As for the second, while Woods claims that the hypoxia election opportunity created a separate private interest in that choice of execution method,[74] he cannot show an erroneous deprivation of that interest. All inmates sentenced prior to the enactment of Act 2018-353 were given the same thirty-day period to decide whether they wanted to be executed by nitrogen hypoxia. Woods made a choice: he did not elect. The State is honoring that choice and executing him with its default method of execution, lethal injection. Moreover, as discussed above, Woods was not unconstitutionally denied information about hypoxia because he had no right to information about the progress of the hypoxia protocol's development.

As for the third *Mathews* factor, the State has "a strong interest in the finality of the criminal judgments and in seeing lawfully imposed sentences carried out in a

---

73. *Ohio Adult Parole Auth. v. Woodward*, 523 U.S. 272, 289 (1998) (O'Connor, J., concurring in part).
74. Doc. 22 at 11.

timely manner."[75] Woods's appeals have concluded, and the State is within its right to move for his lawful sentence to be carried out. There is no reason for the State to wait to request that his execution be set until a method of execution that he will not be using is in place. Nor is there anything arbitrary about the State seeking to execute an inmate via his chosen method of execution once he is eligible for his sentence to be carried out.

Therefore, Woods cannot show a substantial likelihood of success on the merits of this claim.

**B.      Woods cannot show a substantial likelihood of success on the merits concerning his Eighth Amendment claim.**

Woods is not entitled to a stay of execution because he cannot show a substantial likelihood of success on the merits of his Eighth Amendment claim. First, he cannot show that the ADOC's lethal injection protocol "presents a risk that is sure or very likely to cause serious illness and needless suffering, amounting to an objectively intolerable risk of harm."[76] As Justice Thomas noted in his *Price* concurrence, "[t]he three-drug protocol petitioner attacks is the very one we upheld in *Glossip*."[77] While Woods directs this Court[78] to a January 2019 district court

---

75. *Ledford v. Comm'r, Ga. Dep't of Corrs.*, 856 F.3d 1312, 1319 (11th Cir. 2017).
76. *Glossip*, 135 S. Ct. at 2736 (quotation omitted).
77. *Price*, 139 S. Ct. at 1538 (Thomas, J., concurring).
78. Doc. 29 at 16

decision in *In re Ohio Execution Protocol Litigation*[79] as proof of the dangers of the

midazolam protocol, he neglects to mention the subsequent Sixth Circuit opinion

holding that the use of midazolam was **not** unconstitutional, decided last December:

> *Glossip*'s first prong, to begin, presents a high bar. Because the U.S. Constitution does not guarantee "a painless death," prisoners must show more than a risk of pain. *Bucklew v. Precythe*, 139 S. Ct. 1112, 1124 (2019). To be constitutionally cognizable, the pain has to be "severe." *Id.* at 1130, 1133 n.4; *Glossip*, 135 S. Ct. at 2737. How severe? *Bucklew* tells us that earlier modes of execution offer "instructive" examples, both of what qualifies as too severe ("[b]reaking on the wheel, flaying alive, rending asunder with horses") and what does not (hanging). *Bucklew*, 139 S. Ct. at 1123 (quoting Benjamin Oliver, *The Rights of an American Citizen* 186 (1832)). Take death by hanging. "Many and perhaps most hangings were evidently painful for the condemned person," *Bucklew* observed, "because they caused death slowly," namely through suffocation over several minutes. *Id.* at 1124. Despite that risk of pain, despite indeed the near certainty of that pain, hangings have been considered constitutional for as long as the United States have been united. All of this puts Henness's claims about risks of pain in context. Yes, he points to the risks of chest tightness and chest pain. But that pales in comparison to the pain associated with hanging. And yes, he points to the risks of sensations of drowning and suffocation. But that looks a lot like the risks of pain associated with hanging, and indeed may present fewer risks in the typical lethal-injection case.
>
> Further, the district court erred in finding that Henness met his burden of proving that midazolam is incapable of suppressing his consciousness enough to prevent him from experiencing—at a constitutionally problematic level—the pain caused by the combination of the paralytic agent and potassium chloride. The relevant inquiry is whether an inmate injected with 500 milligrams of midazolam would subjectively experience unconstitutionally severe pain—an inquiry that Henness has failed to prove should be answered in his favor. To be sure, the bulk of Henness's evidence focuses on the fact that midazolam is incapable of rendering an inmate insensate to pain. But "the Eighth

---

79. 2:11-cv-01016, 2019 WL 244488, at *70 (S.D. Ohio Jan. 14, 2019).

Amendment does not guarantee a prisoner a painless death," so it is immaterial whether the inmate will experience *some* pain—as noted, the question is whether the level of pain the inmate subjectively experiences is constitutionally excessive. *See Bucklew*, 139 S. Ct. at 1124. And the fact that midazolam may not prevent an inmate from experiencing pain is irrelevant to whether the pain the inmate might experience is unconstitutional. Without evidence showing that a person deeply sedated by a 500 milligram dose of midazolam is still "sure or very likely" to experience an unconstitutionally high level of pain, Henness has not met his burden on this prong, and the district court clearly erred in concluding otherwise.

The point is not new. We reached the same conclusion, as an en banc court, in *Fears*. *See* 860 F.3d at 884–86. There (as here) the defendant claimed that the 500-milligram dose of midazolam used in Ohio's three-drug protocol could not adequately allay the risk of serious pain. *Id.* After considering the testimony of several medical experts, as well as reports from numerous executions carried out using the three-drug protocol, we rejected the suggestion that the protocol was " 'sure or very likely' to cause serious pain." *Id.* at 886–90 (quoting *Glossip*, 135 S. Ct. at 2737). To the contrary, we reasoned, doses of midazolam were "sometimes used alone for intubation" during medical procedures without causing meaningful distress. *Id.* at 888. Henness offers no good reason for reaching a different outcome today.[80]

Moreover, Woods's citations to the rejected conclusion of an Ohio district court and the Eleventh Circuit's *Price* decision are no substitute for presenting evidence of his own. Woods has not shown that midazolam is "sure or very likely" to cause him an unconstitutionally high level of pain. And the fact that the Eleventh Circuit held that Price had made that showing at the preliminary injunction phase of his suit is particularly poor evidence because the State focused on *Glossip*'s second

---

80. *In re: Ohio Execution Protocol Litigation*, 946 F.3d 287, 290–91 (6th Cir. 2019) (some citations edited).

prong during that proceeding, and did not at that time file evidence that contested Price's evidence on the first prong.[81] Here, Woods has not presented evidence to this Court. It is thus improper to presume Woods would likely satisfy this prong when he has not yet even requested a hearing to show that he can satisfy this prong.

Second, Woods has not named an alternate method of execution that is "feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain."[82] While Woods relies on the Eleventh Circuit's April 10, 2019, opinion in *Price*, that opinion conflicts with *Bucklew*. Again, Justice Thomas's May 2019 concurrence in *Price* calls the lower court's decision into doubt:

> And the Eleventh Circuit's April 10 analysis about whether nitrogen hypoxia was "available" and could be "readily implemented" was suspect under our precedent. As we recently held, "the inmate's proposal must be sufficiently detailed to permit a finding that the State could carry it out relatively easily and reasonably quickly." *Bucklew*, 139 S. Ct. at 1115 (internal quotation marks omitted). Here, petitioner's haphazard, one-page proposed protocol—provided for the first time in his motion for reconsideration less than a week before his scheduled execution date—was, to put it charitably, untested. It contemplated that the execution team could use a "hose fitting" to "fill" a "hood" with nitrogen gas, and then attempt to "[p]lace [the] hood over [the] inmate's head" and "secure" it with an "elastic strap/drawstring to ensure seal." Even if all the equipment were available on Amazon.com, as he alleged, many details remained unanswered, particularly regarding the actual process of administering the gas and, critically, the safety of the state employees administering it. For instance, what does "a robust yet controlled flow of nitrogen" mean? How full of nitrogen gas should the hood be before placing it over the inmate's head? How does one prevent nitrogen from seeping out of the hood into the execution chamber

---

81. *See Price*, 920 F.3d at 1330.
82. *Baze*, 553 U.S. at 52.

before the hood is secured? The need to settle on details like these explains why the State has repeatedly stated that it will not be ready to implement its nitrogen hypoxia method until the end of the summer or later (and why the State requested that inmates elect nitrogen within a set time period). Petitioner's proposal certainly fell short of showing a safe alternative that could be "readily implemented" by Alabama, particularly in the week before his scheduled execution.[83]

At least Price attempted to provide a protocol. Woods has done nothing of the sort. Indeed, he did not truly identify an alternative in his complaint—rather, he asked for the hypoxia protocol to be given to him so that he could consider his options, and he waited until his execution had been set before committing to hypoxia.[84] His complaint does not describe a protocol that is feasible, readily implemented **by the ADOC**, and significantly safer than the ADOC's midazolam protocol—the *Glossip* protocol, which is not unsafe or unconstitutionally cruel and unusual. Woods has alleged no facts showing that the ADOC's protocol violates the Eighth Amendment in general, nor that it would be unusually painful or unsafe as applied to him.

Finally, Woods has also offered nothing more than a citation to a study authored by three criminal justice and legal studies professors suggesting that hypoxia would be safer than lethal injection.[85] His offer to submit the report to this

---

83. *Price*, 139 S. Ct. at 1538–39 (Thomas, J., concurring in denial of certiorari) (citations edited).
84. Doc. 19-3.
85. Doc. 1 ¶ 56 (citing MICHAEL COPELAND ET AL., NITROGEN INDUCED HYPOXIA AS A FORM OF CAPITAL PUNISHMENT (2015), https://bit.ly/2OpVECt). The study

Court[86] does not give the report any additional weight of authority.

As Woods has failed to satisfy his burden under *Baze*, *Glossip*, and *Bucklew*, he cannot show a substantial likelihood of success on the merits of this claim.

### C.    Woods cannot show a substantial likelihood of success on the merits concerning his Fourteenth Amendment equal protection claim.

As set forth in Defendants' earlier motion,[87] in this Circuit, to establish an equal protection violation, an inmate must show that "(1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race."[88] Woods cannot show a substantial likelihood of success for several reasons.

First, there are two classes of death-row inmates: those who timely elected hypoxia, and those who did not. The Code of Alabama provides that execution shall

---

was written at the request of Oklahoma State Representative Mike Christian by his former classmate Michael Copeland, an attorney and then-criminal justice professor. Josh Sandburn, *The Dawn of a New Form of Capital Punishment*, TIME (Apr. 17, 2015, 4:15 PM), https://bit.ly/2S9yfWU. Copeland's coauthors were Thomas Parr, another criminal justice professor, and Dr. Christine Pappas, a political science and legal studies professor. *Christine Pappas*, ECU, https://www.ecok.edu/directory/christine-pappas (last visited Feb. 3, 2020); *Thomas Parr*, ECU, https://www.ecok.edu/directory/thomas-parr (last visited Feb. 3, 2020). All three taught at East Central University in Oklahoma.

86. Doc. 29 at 17.
87. Doc. 19 at 39.
88. *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001) (internal quotation omitted).

be by lethal injection "unless the person sentenced to death affirmatively elects to be executed by electrocution or nitrogen hypoxia,"[89] and so the ADOC cannot execute those inmate who affirmatively elected hypoxia until a protocol is finalized. There is no such impediment, however, to the execution of those inmates, like Woods, who did not so elect. Woods had the same opportunity as every other death-row inmate to elect hypoxia and join that class. Defendants did not prevent him from contacting his counsel for advice, and he was even given an election form. But Woods chose not to elect. As Woods is now not similarly situated to the inmates who elected hypoxia, he has not alleged an equal protection violation.[90]

Second, Woods has not been "targeted" for execution. His conventional appeals have ended, the State is not prohibited from seeking his execution, and so the State was well within its rights to request that Woods's lawful sentence be carried out.

Third, the State has a legitimate interest in being able to plan for and appropriately schedule executions so as not to waste resources. For lethal injection, drugs must be procured, and ADOC personnel must take time to check the

---

89. ALA. CODE § 15-18-82.1(a).
90. *E.g.*, *Sweet v. Sec'y, Dep't of Corrs.*, 467 F.3d 1311, 1318–19 (11th Cir. 2006) ("To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis.").

equipment and run practice sessions. For nitrogen hypoxia, the same financial and time constraints will presumably apply. If an inmate were allowed to change his method of execution at any point, it would hamper the State's ability to properly plan.

Therefore, Woods cannot show a substantial likelihood of success on the merits of this claim.

### D. Woods cannot show a substantial likelihood of success on the merits concerning his state-law fraud claims.

Woods cannot show a substantial likelihood of success on either of his state-law fraud claims.

At the outset, because Woods's constitutional claims are meritless, the Court should decline to exercise supplemental jurisdiction over his state-law claims. These claims certainly should not give rise to grounds for a stay of execution—particularly as Woods presented them to the Alabama Supreme Court,[91] which denied a stay on February 14.

Concerning Woods's fraudulent misrepresentation claim, he must show "(1) that the defendant made a false representation; (2) that the false representation concerned a material existing fact; (3) that the plaintiff relied upon the false

---

91. Petitioner Woods' Amended Motion for a Stay of Execution and Memorandum in Support Thereof at 29–33, *Woods v. Alabama*, No. 1071037 (Ala. Feb. 11, 2020).

representation; and (4) that the plaintiff was damaged as a proximate result of the reliance."[92] But the only false representation he alleges is that Defendants failed to inform him that the hypoxia protocol had not been finalized during the election period.[93] Concerning Woods's fraudulent suppression claim, he must show:

> Suppression of a material fact that a party is under an obligation to communicate constitutes fraud. Ala. Code 1975, § 6-5-102. The elements of a cause of action for fraudulent suppression are: (1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury.[94]

As above, the alleged suppression concerns the state of the hypoxia protocol at the time of the election period.

Woods cannot show a substantial likelihood of success on the merits for multiple reasons. First, nothing in Act 2018-353 or the Code of Alabama required the ADOC to have a hypoxia protocol in place by the time of enactment or to inform inmates of the status of the protocol's development. Second, there is no "execution-targeting policy"[95] aimed at inmates who declined to elect hypoxia. The State moves for the execution of inmates who have exhausted their conventional appeals in coordination with the ADOC, specifically considering whether the ADOC is able to carry out a particular form of execution at a given time. For now, the ADOC is able

---

92. *Baker v. Hanks*, 661 So. 2d 1155, 1157 (Ala. 1995).
93. Doc. 1 ¶¶ 96–98.
94. *Lambert v. Mail Handlers Ben. Plan*, 682 So. 2d 61, 63 (Ala. 1996).
95. Doc. 1 ¶ 104.

to procure the drugs necessary for lethal injection, and so there is no reason not to carry out Woods's sentence.

The harm that Woods alleges in these claims is that his execution has been scheduled sooner than the executions of inmates who elected hypoxia, and he insists that Defendants committed fraudulent misrepresentation and suppression by failing to tell him that the hypoxia protocol was still under development during the election period. But Woods was properly sentenced to death for his part in the slaying of three police officers, and he has no right to choose the date of his execution. As the Alabama Supreme Court has noted, "If there is no such right, there can be no harm done to it."[96] Woods's appeals have stretched his time on death row from 2005 until 2020, and there is no impediment to his execution.

Therefore, Woods cannot show a substantial likelihood of success on the merits of this claim.

### E.      Woods cannot show a substantial likelihood of success on the merits concerning his state-law AAPA claim.

Finally, Woods cannot show a substantial likelihood of success on his state-law Alabama Administrative Procedure Act ("AAPA")[97] claim.

Again, because Woods's constitutional claims are meritless, the Court should

---

96. *Moring v. State Farm Mut. Auto. Ins. Co.*, 426 So. 2d 810, 813 (Ala. 1982).
97. ALA. CODE § 41-22-1 *et seq.*

decline to exercise supplemental jurisdiction over his state-law claims. These claims certainly should not give rise to grounds for a stay of execution—particularly as Woods presented them to the Alabama Supreme Court,[98] which denied a stay on February 14.

Woods alleges that Defendants have violated the AAPA by enacting without proper notice a "rule that targets for execution only those death-sentenced inmates who opted into nitrogen gas[.]"[99] Considering the rest of Woods's complaint, this assertion appears to be a mistake, perhaps intended to read "only those death-sentenced inmates who *did not opt* into nitrogen gas." But there is no such rule, and Defendants have not "targeted" any inmate. The ADOC continues to develop its hypoxia protocol, those inmates who affirmatively elected hypoxia cannot be executed until it is completed, but inmates like Woods who did not elect have no statutory impediment to their execution. Defendants have "a strong interest in . . . seeing lawfully imposed sentences carried out in a timely manner,"[100] and so Defendants seek to expeditiously carry out the sentences of those inmates who have exhausted their conventional appeals and are not currently prohibited from being executed. Woods has no right to choose the date of his execution, but Defendants

---

98. Petitioner Woods' Amended Motion for a Stay of Execution and Memorandum in Support Thereof at 29–33.
99. Doc. 1 ¶¶ 113–15.
100. *Ledford*, 856 F.3d at 1319.

have every right to see that his sentence is carried out.

Therefore, Woods cannot show a substantial likelihood of success on the merits of this claim.

**F.    The State and victims have an important interest in the timely enforcement of Woods's sentence.**

While Woods contends that public interest favors a stay of execution,[101] "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a sentence."[102] Woods has been on death row since 2005 for his part in the brutal slaying of three police officers in the line of duty and the attempted murder of a fourth. The officers did not attack him. They did not shoot him or spray him with mace. They simply attempted to do their job: arrest Woods on an outstanding warrant. Instead, they lost their lives. This is the sort of attack that strikes at the heart of a civil society.

As the Eleventh Circuit recently wrote:

> [W]hile "neither [the State] nor the public has any interest in carrying out an execution" based on a defective conviction or sentence, *see Ray v. Comm'r, Ala. Dep't of Corr.*, 915 F.3d 689, 702 (11th Cir. 2019), "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a [valid] sentence," *Hill*, 547 U.S. at 584. Stays of executions where the conviction and sentence are valid impose a cost on the State and the family and friends of the murder victim. As we have stated many times, "[e]ach delay, for its span, is a commutation of a death sentence to one of imprisonment." *Thompson v. Wainwright*,

---

101. Doc. 29 at 25–26.
102. *Hill*, 547 U.S. at 584.

714 F.2d 1495, 1506 (11th Cir. 1983); *see McNair v. Allen*, 515 F.3d 1168, 1176 (11th Cir. 2008) (same); *Jones v. Allen*, 485 F.3d 635, 641 (11th Cir. 2007) (same); *Williams v. Allen*, 496 F.3d 1210, 1214 (11th Cir. 2007) (same); *Schwab v. Sec'y, Dep't of Corr.*, 507 F.3d 1297, 1301 (11th Cir. 2007) (per curiam) (same); *Rutherford v. McDonough*, 466 F.3d 970, 978 (11th Cir. 2006) (same); *Lawrence v. Florida*, 421 F.3d 1221, 1224 n.1 (11th Cir. 2005) (same).[103]

Woods received enough delay while he litigated his conventional appeals. Those appeals have concluded, and the State has not violated Woods's rights by setting his lawful execution. His § 1983 complaint is meritless and untimely. Therefore, this Court should deny Woods's motion for stay of execution.

## CONCLUSION

For the reasons set forth above, Defendants ask this Honorable Court to deny Woods's motion for stay of execution.

Respectfully submitted on February 25, 2020.

> Steve Marshall
> *Alabama Attorney General*
>
> **/s/ Lauren A. Simpson**
> Lauren A. Simpson
> *Alabama Assistant Attorney General*
> Counsel for Defendants

---

103. *Bowles v. Desantis*, 934 F.3d 1230, 1248 (11th Cir. 2019) (citation edited)

## CERTIFICATE OF SERVICE

I certify that on February 25, 2020, I served a copy of the foregoing upon counsel for the Plaintiff by filing the same via the Court's CM/ECF system, which shall cause the same to be electronically transmitted to: **J.D. Lloyd, Marc Shapiro, Warrington Parker, Jose Mario Valdes**, and **Shane McCammon**.

Respectfully submitted,

Steve Marshall
*Alabama Attorney General*

***/s/ Lauren A. Simpson***
Lauren A. Simpson
*Alabama Assistant Attorney General*
Counsel for Defendants

OF COUNSEL:

Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130
Tel: (334) 353-1209
Fax: (334) 353-8400
Lauren.Simpson@alabamaag.gov